## INHABITANTS OF SANFORD *versus* INHABITANTS OF LEBANON.

In an action by one town against another for pauper supplies, furnished to a married woman, it is no defence that the notice, given to the overseers of the defendant town, alleged merely that the *wife* of A. B., had become chargeable, without stating that *A. B.* had become chargeable.

A notice, valid as to one pauper, is not rendered invalid by being united with a defective notice respecting other paupers.

When minor children are separated from their father and maintained by the town of their legal settlement, by reason of his inability to support them, such separation is not to be considered as an abandonment by him of his children, or an abandonment by them of their father. Such support of his children is to be considered as supplies indirectly furnished to him within the import of the sixth clause of the first section of Rev. Stat. chap. 32.

ASSUMPSIT, for pauper supplies, furnished to the wife and children of Ivory Hersom. The settlement of Hersom had been in Lebanon. While his settlement was there, he became, through poverty, unable to support his family, and some of his children were taken from his custody by the overseers of the poor, and maintained at the expense of that town. While the children were so supported, he removed to Sanford, soon after September, 1835, and resided there with his wife and some of his children, until May, 1845 ; but the other children still remained in Lebanon, supported there by that town, during all or very nearly all the time of his residence in Sanford.

The notice, given by the plaintiffs to the defendants, stated that the *wife and children of Ivory Hersom*, had become chargeable as paupers in Sanford, and that their settlement was in Lebanon. The answer denied such settlement.

The verdict was for the plaintiffs, for the amount furnished to the wife.

*N. D. Appleton* and *Eastman*, for defendants.

The notice to the overseers of the defendant town was insufficient, inasmuch as it did not allege, that the husband had become chargeable. If such a notice is sufficient, one settlement may be established for the wife, and another for the husband ; and as each may be removed to the place of his or her settlement, they may be separated for life, merely because of their poverty.

The defendants also moved for a new trial, because the settlement of Ivory Hersom, and consequently that of his wife, was established in Sanford, by five years residence there.

This motion was resisted by the plaintiffs, upon the ground that during all the time of his residence in Sanford, he was, though indirectly, receiving supplies as a pauper from the town of Lebanon, which supplies consisted in the support furnished there to some of his children.

The defendants' counsel argued, that, as the children who were maintained by Lebanon, were separated from their father's family, and the charge of them had been taken from him by the lawful acts of the overseers, they are to be considered emancipated ; and, therefore, the supplies furnished to them were not, (even indirectly,) received by the father. *Green* v. *Buckfield*, 3 Greenl. 136 ; *Dixmont* v. *Biddeford*, 3 Greenl. 205 ; *Poland* v. *Wilton*, 15 Maine, 365 ; *Raymond* v. *Harrison*, 2 Fairf. 190.

*I. S. Kimball*, for plaintiffs.

SHEPLEY, C. J. — The case is presented by a report signed by the Judge, who presided during the trial, containing the testimony introduced, a request for instructions, which were refused, and certain instructions, which were given. No exceptions appear to have been taken to the instructions given, or to the refusal to instruct as requested. Nor is any question of law reserved by the report, for the decision of the full court.

Sanford v. Lebanon.

It is stated, and admitted by the written arguments presented, that "the defendants have moved for a new trial, because the verdict of the jury was against the evidence, the weight of evidence, and the law applicable to the facts in the case." A copy of the motion is not presented.

Questions of law arising during a trial, may in this State, by the provisions of our statute, be reserved by a bill of exceptions in a summary mode, as well as by a report of the presiding Judge. Ch. 96, § 19. When the latter mode is adopted, it must appear by the report, that certain questions of law were expressly reserved, to be decided by the full court. A mere statement, that certain instructions were given or refused, does not constitute a reservation of them for future decision. No rule of practice or correct administration of law, can permit questions of law to be presented for decision, which, from examination of the testimony reported, can be conceived to have arisen in the case. This would deprive the opposite party of all opportunity to obviate them, by proof or explanation, during the trial, and it would occupy the court in the decision of imaginary questions.

A motion to have a verdict set aside, because it is against "the law applicable to the facts in the case," does not present any question of law, which the court can properly entertain and decide. It can only present a question, whether a verdict has been found against the law appearing, or presumed to have been correctly stated.

As there may be doubts, whether the present case has not been imperfectly presented on account of the decease of an eminent counsellor, an opinion upon the questions of law presented by the arguments will not be withheld.

The notice, that "the wife and children of Ivory Hersom," had become chargeable as paupers, it is insisted, was insufficient to entitle the plaintiffs to recover for expenses incurred, for the relief of the wife. To allow this, it is said, would authorize the removal of the wife, and thus separate husband and wife. Such a result would not necessarily follow. If they were found residing together, and the wife to have been

properly supplied as a pauper, the husband would thereby become a pauper, and liable to be removed with his wife. If supplies were furnished to her under such circumstances, that the husband would not thereby become a pauper, the separation must have been already made. The effect of the notice respecting the wife, will not be prevented by its being united with a defective notice respecting other persons.

The request for instructions, that the notice would be "bad as to all," if the jury could not distinguish between "supplies furnished the wife, and those, which went for the benefit of the children and the father," were properly refused. The notice could not be made good or otherwise by the action of the jury. Its sufficiency was a question of law, to be decided by the court.

If the jury were unable to ascertain from the testimony, that supplies had been furnished and used for the relief of the wife, the plaintiffs would not have been entitled to recover any thing, not for want of notice but for want of proof.

The defendants could not have been aggrieved by the instructions, which were given. A correct rule for their guidance respecting the amount was presented to them.

The motion is to be considered.

Ivory Hersom appears to have had a legal settlement in Lebanon. It is contended, that he had subsequently gained a settlement in Sanford, by residing in that town five years together without directly or indirectly receiving supplies or support as a pauper.

He and his wife and children were removed as paupers from the town of Rome to the town of Lebanon in the month of July, 1833. His wife appears to have died at another place soon after, and he married again on September 9, 1835, and soon afterward established his residence in the town of Sanford, where he continued to reside, as defendants contend, until May, 1845, when his second wife died. His minor children by his former wife, did not reside in his family after his second marriage, but one or more of them were supported as paupers by the town of Lebanon, after they were removed from Rome,

and during most, if not all, of the time during his residence
in Sanford. If he had been of sufficient ability, he might
have been required to support them, or to pay the expenses in-
curred for their support. While thus supported, they were
taken from his care and custody by operation of law, not
because they had abandoned him, or because he had aban-
doned them. They were thus separated from him before any
pretence of abandonment appears. He could have resumed
the exercise of all his parental rights, whenever he could have
supported them, and they might have claimed the perform-
ance of parental duties. The parental and filial relations were
not broken up, but suspended during the subjection of the
children to the care of the overseers of the poor for their sup-
port. Their father testifies that he never had any care or con-
trol of any of his children by his first wife, after his second
marriage, except for a short time, when one of them was sick.
And that none of them were at his house during that time
except for very short seasons, stated by him. This testimony
is entirely consistent with the facts before stated, and when
taken in connexion with them, does not prove a destruction of
the parental and filial relations. The origin and cause of the
separation is still perceived to have been the operation of law,
upon his inability to support his children.

He also states that it was not his intention to have his chil-
dren in his family, or to have the care and control of them.
Whether a child has or not been abandoned or emancipat-
ed, is a mixed question of law and fact, little dependent upon
mere intentions, when it is perceived, that other prevailing
facts have prevented such intentions from having any import-
ant influence upon the condition of the children.

The case of *Green* v. *Buckfield*, 3 Greenl. 136, was decid-
ed upon a different provision for settlement, not containing the
words "directly or indirectly" contained in the provision ap-
plicable to this case. And the report states, that the husband,
wife and children, had separate places of residence, "the latter
wholly abandoned by the parents and released from all control
by them for nine years preceding" March 21, 1821; and that

Sanford v. Lebanon.

two of them "for a long period of time before were supported as paupers." The rule presented by the case is, that supplies could not be considered as furnished to one as a pauper, "unless furnished to himself personally or to one of his family, and that those only can be considered as his family, who continue under his care and protection." The case does not determine under what circumstances a minor child is to be regarded as no longer under the parental care and protection, or is to be considered as abandoned. The case having found the fact of abandonment required no such consideration.

It was left for future cases to determine under what circumstances children should be considered to be under the care and protection of their parents, or as abandoned by them. The subsequent cases do no more than this, and could do no less. It is quite erroneous, therefore, to conclude, that they are inconsistent with it.

In the case of *Raymond* v. *Harrison*, 2 Fairf. 190, the difference of language used in the two different provisions for settlement already noticed, does not appear to have attracted the attention of the court. The fact of abandonment appears to have been so thoroughly established as to have been assumed in the instructions to the jury, and to have been the foundation, upon which the decision rested.

In the case of *Garland* v. *Dover*, 19 Maine, 441, it became necessary to consider and determine, under what circumstances a minor child could be considered as abandoned, or still under the care and protection of a parent. It was obvious that the mere fact, that the child was not residing in the family of the parent, would afford no satisfactory proof of abandonment. Some other and more satisfactory criterion was to be sought, and one was presented as having a powerful influence, that of the preservation or destruction of the parental and filial relations. It was approved by the court upon full consideration, and none more satisfactory has since been presented.

The considerations thus presented would authorize the jury to find, that the parental and filial relations between Ivory Hersom and his minor children, had not been broken up,

although suspended by operation of law; that they had not been abandoned by him, and that he had indirectly received supplies as a pauper, while he resided in Sanford, by the support of his children as paupers in Lebanon.

It will not therefore be necessary to notice the testimony tending to prove, that the testimony of Ivory Hersom was unworthy of credit, or that tending to prove, that his residence was not established in the town of Sanford for five years together, without having received supplies as a pauper, for the relief of those persons, who were residing in his family.

*Motion overruled, and judgment on the verdict.*